# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

GATEWAY GREENS COMMUNITY
ASSOCIATION, INC.,

           **Plaintiff,**

-vs-                                     **Case No.  2:09-cv-652-FtM-DNF**

COMCAST OF THE SOUTH, INC. ,
GATEWAY/JONES COMMUNICATIONS,
LTD., and COMCAST OF CALIFORNIA
XIV, LLC,

           **Defendants.**

_____

# ORDER

This cause is before the Court on the Defendants, Comcast of the South, Inc. ("Comcast of the South"), Gateway/Jones Communications, Ltd., ("Gateway/Jones"), and Comcast of California XIV LLC's ("California XIV") Motion for Summary Judgment on Plaintiff's Second Amended Complaint (Doc. 41) filed on January 3, 2011.  The Plaintiff, Gateway Greens Community Association, Inc. ("Gateway Greens") filed a Response (Doc. 45) on January 19, 2011.  The parties consented to proceed before a United States Magistrate Judge and an Order (Doc. 50) was entered on March 29, 2011 approving the consent.

## I.  Standard for Summary Judgment

Under FED.R.CIV.P. 56(c) a motion for summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   The burden of

establishing the absence of a genuine material fact is on the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Baby Buddies, Inc. v. Toys R Us, Inc.,* 611 F.3d 1308, 1314 (11th Cir. 2010) (citation omitted). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. *Id*.

Once this burden is met the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp*., 477 U.S. at 324, *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 840 (11th Cir. 2000).  In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322, *Hilburn v. Murata Elecs. N. Am., Inc.* 181 F.3d 1220, 1225 (11th Cir. 1999). When the nonmoving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Anderson*, 477 U.S. 248.

In making this determination, the Court must view all of the evidence and draw all reasonable inferences in a light most favorable to the non-moving party.  *Scott v. Harris,* 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)*; Tana v. Dantanna's,* 611 F.3d 767, 772 (11th Cir.2010)*.* The Court does not weigh conflicting evidence or make credibility determinations. *Hilburn,* 181 F.3d at

-2-

1225 (11th Cir. 1999). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Tullius v. Albright,* 240 F.3d 1317, 1320 (11th Cir. 2001), *citing, Clemons v. Dougherty County*, 684 F.2d 1365, 1369 (11th Cir. 1982).

## II.  Undisputed Facts for Summary Judgment Purposes

Gateway Greens is a community association and has 12 sub-associations, containing 1,133 residences. (Decl. Newlin, Doc. 45, Exh. C, ¶4). Gateway/Jones is a limited partnership whose general partner is California XIV. Gateway/Jones, California XIV and Comcast of the South are either owned by Comcast Cable Communications, LLC or are owned by a wholly-owned subsidiary of Comcast Cable Communications, LLC . (Decl. Hagen, Doc. 43, Exh. 2, ¶15). In January 2001, a Comcast entity purchased the entity, Gateway/Jones. (Doc. 45, Exh. E, Depo Hagen, p. 22, p. 41). After the January 2001 purchase, Gateway/Jones became an entity that was included in the "Comcast family tree." (Doc. 45, Exh. E, Depo. Hagen, p. 41).

On September 12, 1989, Gateway/Jones and Gateway Greens entered into a Cable Television Installation and Service Agreement (1989 Agreement). (Doc. 2, Exh. A). In the 1989 Agreement, Gateway/Jones agreed to install at its expense all the equipment needed to furnish cable television services to Gateway Greens. (Doc. 2, Exh. A, ¶2). Gateway/Jones had the exclusive right to provide cable, pay, subscription or similar televison services to Gateway Greens. (Doc. 2, Exh. A, ¶3). The term of the 1989 Agreement was from September 12, 1989 until "September ___ , 1999, and "shall automatically be renewed for ten years thereafter unless Operator [Gateway/Jones] gives Homeowners' Association [Gateway Greens] written notice of termination within 90 days before or after September ___, 1999." (Doc. 2, Exh. A, ¶10). The 1989 Agreement had a provision that did

not allow it to be assigned by Gateway/Jones without the prior written consent of Gateway Greens, however such consent was not to be "unreasonably withheld, provided that Operator [Gateway/Jones] may assign this Agreement to Jones Intercable, Inc. ("JIC"), Gateway Communications Services, Inc. ("GCS"), any limited partnership(s) of which JIC or GCS is the managing general partner, any joint venture or general partnership of which JIC or GCB or any such limited partnership(s) is the managing partner or any other entity controlled by or under common control with JIC or GCS, and provided further that this Agreement may be assigned by Operator to any lending institution(s) as collateral security for financing purposes." (Doc. 2, Exh. A, ¶14(e)).  Gateway Greens received a discount from Gateway/Jones' retail rate of 5% in 1989 and 1990, 10% in 1991 and 1992, and 15% since 1993. (Decl. Hagen, Doc. 43-2, ¶5).  The 1989 Agreement was signed by Gateway/Jones Communications, LTD by its general partner Jones Intercable of Ft. Myers, Inc.  (Doc. 2, Exh. A, p. 15).

On December 31, 2001, Gateway/Jones and Gateway Greens entered into the First Amendment to the Cable Television Installation and Service Agreement ("2001 Amendment").  (Doc. 2, Exh. B). The parties entered into this 2001 Amendment so that neighborhood associations developed after the 1989 Agreement would be included and would receive the benefits and burdens of the 1989 Agreement.  (Doc. 2, Exh. B, ¶A and B).   The term of the 1989 Agreement was changed, and the term of the 2001 Amendment continued until September 12, 2014, and  "shall be automatically renewed for (a) one (1) additional term of five (5) years unless Operator [Gateway/Jones] gives written notice to Homeowners' Association [Gateway/Greens] of termination within ninety (90) days prior to the expiration date of the then-current term," and was automatically renewed for an additional five (5) year term allowing either Gateway/Jones or Gateway Greens "to give written notice to the other party

of termination within ninety (90) days prior to the expiration date of the then-current term." (Doc. 2, Exh. B, ¶1(ii)).

The Amendment also deleted the first sentence of Subsection 14(e) of the 1989 Agreement and substituted language that the Amendment may not be assigned by Gateway/Jones without the prior written consent of Gateway Greens and such consent could not be unreasonably withheld, "provided that Operator [Gateway/Jones] may assign this Agreement without the consent of Homeowners' Association [Gateway Greens] to (i) any affiliate of either Operator or the general partner of Operator and (ii) to any lending institution(s) as collateral security for financing purposes." (Doc. 2, Exh. B, ¶1(i) p. 2). In the 2001 Amendment, Gateway/Jones agreed to upgrade the cable television system to include additional channels, pay-per-view services, and high speed access to the Internet via cable modem. (Doc. 2, Exh. B, ¶4). The 2001 Amendment was signed by Gateway/Jones by its General Partner Comcast Cablevision Corporation of California, LLC, and Gateway Greens by its President. (Doc. 2, Exh. B, p. 3, 4). The 2001 Amendment was negotiated as an arms-length transaction, and both sides were represented by counsel and sophisticated business people. (Decl. Decl. Hagen, Doc. 43-2, ¶17).

Gateway Greens brings a cause of action for declaratory judgment pursuant to Fla. Stat. §86 to terminate the 1989 Agreement and the 2001 Amendment as unenforceable because the 1989 Agreement and 2001 Amendment were not properly assigned from Gateway/Jones to Comcast of California or Comcast of the South, and that certain provisions of the 1989 Agreement and the 2001 Amendment are unconscionable.

### III.  Assignment

The Defendants argue that the 1989 Agreement and the 2001 Amendment were never assigned. The parties to the 1989 Agreement were Gateway Greens and Gateway/Jones.  The parties to the 2001 Amendment were Gateway Greens and Gateway/Jones and therefore the Defendants contend no assignment of either the 1989 Agreement or the 2001 Amendment ever occurred.  Gateway Greens argues that material facts are in dispute regarding the issue of an assignment.  Gateway Greens agrees that parties to the 1989 Agreement are Gateway Greens and Gateway/Jones.  However, Gateway Greens argues that Gateway/Jones assigned its rights and obligations under the 1989 Agreement to Comcast. Gateway Greens asserts that if Gateway/Jones was acquired in 2001 by Comcast and Comcast provided services to Gateway Greens community then there must have been an assignment of the 1989 Agreement.  Gateway Greens concludes that without an assignment of the 1989 Agreement, Comcast of California would not have the authority to amend any provisions of the 1989 Agreement and would not have the authority to enter into the 2001 Amendment.

This action was removed from state court based upon diversity jurisdiction.  Federal courts sitting in diversity apply state substantive law and federal procedural law, therefore Florida law applies to the issues raised in the Motion for Summary Judgment.  *Pendergast v. Sprint Nextel Corp.,* 592 F.3d 1119, 1132-33 (11th Cir. 2010).  "An assignment is a transfer of all the interests and rights to the thing assigned." *Price v. RLI Ins. Co.*, 914 So.2d 1010, 1013 (Fla. 5th DCA 2005) (citing *Dept. of Rev. v. Bank of America*, 752 So.2d 637 (Fla. 1st DCA 2000); and,  *Rose v. Teitler*, 736 So.2d 122 (Fla. 4th DCA 1999)).  After the assignment, the assignee "stands in the shoes of the assignor" and is able to enforce the terms of the contract against the original party to the contract. *Id.* (citing *Dove v. McCormick*, 698 So.2d 585 (Fla. 5th DCA 1997); *State Farm Fire and Cas. Co. v. Ray*, 556 So.2d

811 (Fla. 5th DCA 1990)). Contract rights may be assigned unless the contract rights involve obligations of a personal nature, there is a public policy against assignment, or the contract specifically prohibits the assignment. *Id.* (citing *W.S. Badcock Corp. v. Webb*, 699 So.2d 859 (Fla. 5th DCA 1997); *New Holland, Inc. v. Trunk*, 579 So.2d 215 (Fla. 5th DCA 1991)).

Before determining whether the 1989 Agreement allowed Gateway/Jones to assign it, the Court must determine whether an assignment of the 1989 Agreement occurred. Gateway/Jones entered into the 1989 Agreement which was signed by the general partner, Jones Intercable of Ft. Myers, Inc. Gateway/Jones entered into the 2001 Amendment which was signed by its new general partner, Comcast Cablevision Corporation of California, LLC. The entity, Gateway/Jones still exists as part of the Comcast conglomerate. As long as the entity Gateway/Jones exists, then Gateway/Jones is the same entity that entered into the 1989 Agreement and the 2001 Amendment, and no assignment of all of the rights and obligations under the 1989 Agreement occurred.

Gateway Greens has failed to show any evidence that an assignment occurred other than to allege that a different general partner entered into the 2001 Amendment. In fact, Gateway Greens has sued Gateway/Jones under the terms of the 1989 Agreement and 2001 Amendment and the entity Gateway/Jones filed an Answer and Affirmative Defenses to Second Amended Complaint (Doc. 32) and has defended itself in this action.

Gateway/Jones had the authority to enter into the 2001 Amendment with Gateway Greens. Further, Gateway Greens has not produced any evidence or any facts showing that Gateway/Jones is prohibited from fulfilling the terms of the 1989 Agreement and 2001 Amendment by using Comcast to supply cable services and infrastructure. Gateway Greens has also not produced any evidence or argument that an assignment was required, necessary, or occurred by virtue of the acquisition of

Gateway Jones by another General Partner.  Therefore, the Court finds that no assignment of the 1989 Agreement and 2001 Amendment occurred.

## IV.  Unconscionability

If at the time a contract was executed, a term or terms of the contract were unconscionable, then a court may refuse to enforce either the contract or the unconscionable term in the contract. *Steinhardt v. Rudolph*, 422 So.2d 884, 889 (Fla. 3d DCA 1982).    The Defendants assert that under Florida law, both substantive and procedural unconscionability are required to prevail on a claim that a contract is unenforceable citing *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134 (11th Cir. 2010) and *Hialeah Automotive, LLC v. Basulto*, 22 So.3d 586 (Fla. 3d DCA 2009) as well as other cases.  Although Gateway Greens does not contest this legal argument, the Court reviewed the cases cited, and these cases involve arbitration agreements.  In a footnote in  *Hialeah Automotive, LLC v. Basulto*, 22 So.3d 586, n. 4 (Fla. 3d 2009), the Court discussed that case law does require a showing of both procedural and substantive unconscionability in invalidating a contract in arbitration cases, however, this holding may not apply in all contract cases. The procedural-substantive analysis is only a general approach to the issue of unconscionability and not the rule of law.  *Id*. (citing *Steinhardt v. Rudolph*, 422 So.2d 884, 889 (Fla. 3d DCA 1982)).  Procedural unconscionability is just one factor to consider and not a required element. *Id*.

Most courts employ a balancing approach "tipping the scales" in favor of unconscionability, and most  "require a certain quantum of procedural plus a certain quantum of substantive unconscionability." *Steinhardt v. Rudolph*, 422 So.2d 884, 889 (Fla. 3d DCA 1982) (internal

quotations omitted) (quoting *Kohl v. Bay Colony Club Condominium, Inc.* 398 So.2d 865, 868 (Fla. 4th DCA 1981)).   However, if a contract is "sufficiently inequitable to meet the test of substantive unconscionability, then it should not be enforced" without consideration as to whether the contract was procedurally unconscionable.   *Hialeah Automotive, LLC. v. Basulto*, 22 So. 3d 586, n. 4 (Fla. 3d DCA 2009).   Therefore, the Court will focus on substantive unconscionability, but will consider procedural unconscionability as one factor in its determination as to the unconscionability of the 1989 Agreement and the 2001 Amendment.

### A.  Procedural Unconscionability

Procedural unconscionability concerns the manner in which the parties entered into the contract and involves the relative bargaining power of the parties and their ability to show that they understood the terms of the contract.   *Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So.2d 990, 992 (Fla. 4th DCA 2004). A party may not avoid a contract that was freely entered because the party elected not to read and understand its terms before executing it or because "in retrospect, the bargain turns out to be disadvantageous." *Estate of Perez v. Life Care Centers of America, Inc.*, 23 So.3d 741, (Fla. 5th DCA 2009) (internal quotations omitted) (quoting *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So.2d 278, 288 (Fla. 1st DCA 2003)).   If a contract is presented on a "take it or leave it" basis from the only provider of a service then this is a strong factor to consider in procedural unconscionability." *VoiceStream Wireless Corp. v. U.S. Communications, Inc.*, 912 So.2d 34 , 39-40 (Fla. 4th DCA 2005). "However, the presence of an adhesion contract alone does not require a finding of procedural unconscionability."  *Id*. (citation omitted).

The Defendants argue that the Second Amended Complaint does not contain any allegations of procedural unconscionability, and that Gateway Greens has failed to produce any evidence that the

1989 Agreement or the 2001 Amendment were procedurally unconscionable. Gateway Greens asserts that the actual homeowners' association did not participate in the negotiation of the terms and conditions of either the 1989 Agreement or the 2001 Amendment as it was the developer that entered into these agreements on behalf of the homeowners' association.

The Court reviewed the Second Amended Complaint (Doc. 31) and does not find any allegations of procedural unconscionability. Gateway Greens has no knowledge of the negotiations for the 1989 Agreement or the 2001 Amendment. (Doc. 45, Exh. F, Depo. Newlin, p. 17, 63). Gateway Greens admitted that the 2001 Amendment was an arms-length transaction. (Doc. 45, Exh. F, Depo. Newlin, p. 64). Further, both sides were represented by counsel, and, the original developer was Westinghouse which was later taken over by WCI, both large, sophisticated corporations. (Doc. 43, Exh. 2, Hagen Decl. ¶17; Doc. 45, Exh. F, Depo. Newlin, p. 20).

The Court finds that Gateway Greens has failed to produce any evidence of procedural unconscionability. The 1989 Agreement and the 2001 Agreement were entered into by Gateway Greens and whether it was the developer or the present homeowners' association, it was still entered into by Gateway Greens as an arms-length transaction with counsel present. No evidence of force or duress or even a take-it or leave-it argument was set forth. Gateway Greens cannot avoid the 1989 Agreement and the 2001 Amendment by looking back in retrospect and deciding that these agreements are bad bargains. The Court finds that the 1989 Agreement and the 2001 Amendment were not procedurally unconscionable.

### B. Substantive Unconscionability

While procedural unconscionability focuses on the manner in which a contract was entered into and the relative bargaining power of the parties to the contract, substantive unconscionability

-10-

focuses on the actual agreement and whether the terms are unfair or unreasonable. *Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So.2d 990, 992 (Fla. 4th DCA 2004).   Substantive unconscionability "requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience.  A substantively unconscionable contract is one that no man in his senses and not under delusion would make on one hand, and as no honest and fair man would accept on the other." *Premier Real Estate Holdings, LLC v. Butch*, 24 So.3d 708, 710 (Fla. 4th DCA 2009) (internal quotation marks omitted)  (quoting *Bland v. Health Care & Retirement Corp. of Am.,*, 927 So.2d 252, 256 (Fla. 2d DCA 2006)).  As with procedural unconscionability, a court will not relieve one party's obligation under a contract simply because they made a bad bargain.  *Fotomat Corp. of Florida v. Chanda*, 464 So.2d 626, 630  (Fla. 5th DCA 1985).   Further, a court must consider the issue of unconscionability at the time the contract was made.  *Steinhardt v. Rudolph*, 422 So.2d 884, 889 (Fla. 3d DCA 1982) (citations omitted).

Gateway/Jones argues that none of the terms of the 1989 Agreement or the 2001 Amendment are substantively unconscionable.  Gateway Greens asserts that the 1989 Agreement and the 2001 Amendment have no provision for Gateway Greens to terminate the agreements absent default whereas Gateway/Jones may terminate the 1989 Amendment by providing ninety (90) day notice prior to "September ___, 1999" and the 2001 Amendment has a similar provision.  (Doc. 2, Exh. A, ¶10, Doc. 2, Exh. B ¶ 1).   In addition, Gateway Greens argues that the selection of the channels is controlled by Gateway/Jones. Gateway Greens fails to cite any case law which supports a finding of

substantive unconscionability based on the inability of one party to be able to terminate an agreement[1], or a cable company controlling the channel selection.

Gateway Greens has admitted that the terms of the 1989 Agreement were not shocking to the conscience at the time the 1989 Agreement was made. (Doc. 45, Exh. F, Depo. Newlin, p. 18). Gateway Greens does not know if it could have gotten a better deal in 1989 than the one offered by Gateway/Jones. (Doc. 45, Exh. F, Depo. Newlin, p. 18). Gateway Greens received equipment and infrastructure through the 1989 Agreement and the 2001 Amendment and in exchange, Gateway Greens agreed to have extended contracts to allow Gateway/Jones to recoup its investment in the equipment and infrastructure. Gateway Greens received cable stations from Gateway/Jones, maybe not all of the stations that they would like, but nonetheless cable services. Further, Gateway/Jones has provided a discounted rate to the Gateway Greens residences for cable services. Gateway Greens has failed to show that any term of the 1989 Agreement and the 2001 Amendment are "so outrageously unfair" that "no man in his senses and not under delusion would make on one hand, and as no honest and fair man would accept on the other." *Supra.* Therefore, the Court finds the 1989 Agreement and the 2001 Amendment were not substantively unconscionable.[2]

---

[1] Pursuant to the 2001 Amendment, the Agreement may be terminated in 2019. (Doc. 2, Exh. B, ¶1).

[2] Gateway/Jones raises two other arguments, that Comcast of the South, Inc., and Comcast of California XIV, LLC should be dismissed as they were not parties to the 1989 Agreement or the 2001 Amendment and that this action is barred by the status of limitations and laches. Based upon this Court's finding that the 1989 Agreement and the 2001 Amendment were not procedurally or substantively unconscionable, the Court will not reach these other two arguments.

### V.  Conclusion

The Court finds that no assignment of the 1989 Agreement and the 2001 Amendment occurred. The same entities entered into both the 1989 Agreement and the 2001 Amendment, namely Gateway/Jones and Gateway Greens.  The Court also finds that the 1989 Agreement and the 2001 Amendment are not procedurally or substantively unconscionable.  Therefore, the absence of both procedural and substantive unconscionability requires the Court to grant summary judgment.

**IT IS HEREBY ORDERED:**

1) The Defendants' Motion for Summary Judgment on Plaintiff's Second Amended Complaint is hereby **GRANTED**.

2) The Clerk is directed to enter judgment in favor of Comcast of the South, Inc., Gateway/Jones Communications, LTD., and Comcast of California XIV, LLC and close this case.

3) The Clerk is directed to terminate all pending motions and deadlines.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida this __13th__ day of May, 2011.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record

-13-